IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAULA K. HOFFMAN,

    Plaintiff,

        v.

ARCELORMITTAL PRISTINE RESOURCES,
INC. and BETHELEHEM-CUBA IRON
MINES, its successors and assigns,

    Defendants.

11cv0322
**ELECTRONICALLY FILED**

## Memorandum Opinion

**I.    Introduction**

Before this Court in this declaratory judgment action are the parties' cross-motions for summary judgment. Doc. Nos. 12 and 13. Plaintiff, Paula K. Hoffman ("Hoffman"), who filed an action in Washington County, Pennsylvania, which was properly removed to this Court, seeks a declaration that she is the rightful owner of all oil and gas (mineral rights) located beneath the 97 acre property that she (and her now deceased husband) acquired in North Bethlehem Township, Washington County, Pennsylvania in 1971. Defendants, Arcelormittal Pristine Resources, Inc. ("Arcelormittal") and Bethelehem-Cuba Iron Mines ("BCIM") argue in the converse that under the plain language of numerous recorded deeds, that they have been the rightful and legal owners of all interests in oil and gas for a period of approximately 83 years.

After careful consideration of the parties dueling motions for summary judgment, and supporting documentation, and for the reasons that follow, the Court will grant defendants'

motion for summary judgment, and will deny plaintiff's motion for summary judgment.[1] To rule in plaintiff's favor would be tantamount to an eradication of countless oil and gas estates and leases recorded in the history of this Commonwealth, and would profoundly change the landscape of property law as it has developed over hundreds of years.

**II.     Summary Judgment Standards**

Summary judgment under Fed.R.Civ.P. 56 is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted). In deciding a summary judgment motion, the Court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

---

[1] The Court will further deny plaintiff's belated attempt to divest this Court of jurisdiction by arguing that defendant Arcelormittal Pristine Resources, Inc. has no standing and this case should be remanded to the Washington County Court of Common Pleas.

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(c), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

### III. Material Facts

There are no genuine issues of material fact, only issues about the appropriate inferences and legal consequences of the undisputed material facts, and unless noted, the following facts are not disputed.

On or about July 21, 1924, Union Coal and Coke Company conveyed certain property, including the subject parcel, to BCIM by Deed dated same (hereinafter the "1924 Deed"). The 1924 Deed was recorded at the Washington County Record of Deeds Office on September 23, 1924. Then, by Deed dated July 24, 1928 ("1928 Deed"), BCIM conveyed to Mary Kukovich, who is plaintiff's immediate predecessor-in-title, certain rights in and to the parcel as outlined at paragraph 15 of the Complaint.

While defendants contend that the 1928 Deed, which is recounted in the Complaint at paragraph 16, excepted and reserved to ArcelorMittal Pristine (predecessor in title) all rights to the oil and gas within and underlying the parcel, plaintiff argues to the contrary. The Reservation Clause in the 1928 Deed states as follows:

> EXCEPTING AND RESERVING, ALSO, to the Company, its successors and assigns, all gas and oil within and underlying said premises, with the right to enter thereon at any and all times for the purpose of drilling for and extracting the same, with the right to enter thereon at any and all time for the purpose of drilling for and extracting the same, with the right to erect and construct thereon and removing therefrom such derricks, drills, pipelines and other structures . . . as may be deemed by the company, its successors and assigns, to be either necessary or convenient in such drilling or extraction or in the transporting of any oil or gas recovered therefrom . . . .

On May 6, 2003, Bethelehem's successor-in-interest conveyed by Deed ("2003 Deed") to ArcelorMittal Pristine all of BCIM's interest in the Parcel. Complaint at ¶ 4. Doc. No. 13-4. BCIM's interest in the Parcel was owned by a subsidiary of Bethlehem Steel Corporation at the time of its bankruptcy, after which the interest was conveyed to Pristine Resources, Inc., the

4

name of which was later changed to ArcelorMittal Pristine Resources Inc. Doc. Nos. 1-1 and 13-4.[2] Under the heading "Partial Source of Title," the 1924 Deed is identified as the means by which BCIM acquired the Parcel from Union Coal and Coke Company. Doc. No. 13-4 at 12.

By Deed dated July 31, 1971 ("1971 Deed"), plaintiff acquired her interest in the subject land, which Deed was recorded in the Washington County Recorder of Deeds Office at Deed Book Volume 1343, Page 903 and has been attached to the Complaint. Doc. No. 1-1 at ¶ 11. The 1971 Deed reflects a conveyance of the subject land from Mary Kukovich to George L. Hoffman (husband) and plaintiff, Paula K. Hoffman (wife).

Critically, the 1971 Deed (which is attached to plaintiff's complaint) included the following limitation: "EXCEPTING AND RESERVING coal, oil and gas, and other minerals and mining and drilling rights, etc. as conveyed in prior instruments of record in the chain of title." Doc. No. 1-1 at 11.

Notwithstanding the immediately hereinabove language in the 1971 Deed, on November 29, 1971 plaintiff and her deceased husband entered into a lease with John T. Stoliker of Richmond, Michigan for the development of the oil and gas underlying the subject land. Said lease is also recorded in the Washington County Recorder of Deeds at Volume 1355 Page 398 and a copy thereof is attached to plaintiff's complaint. Doc. No. 1-1, Exhibit 6, at 27.

Despite the language in the 1971 Deed, on August 25, 1981, plaintiff and her deceased husband again entered into a lease with Ashtola Production Company for the development of the oil and gas underlying the subject land. Said lease is also recorded at the Washington County Recorder of Deeds Office in Deed Book 2042 Page 189, and a copy thereof is attached as an Exhibit to plaintiff's complaint. Doc. No. 1-1, Exhibit 5, at 24.

---

[2] These facts relate also to plaintiff's belated motion to dismiss defendant Arcelormittal Pristine Resources, Inc,. for lack of standing and will be addressed in subsection IV-C. below.

5

Finally, on April 1, 2006, plaintiff and her deceased husband leased the subject lands for the development of natural oil and gas with Atlas America, Inc. This lease is recorded at the Washington County Recorder of Deeds Office at Instrument number 200612898, and is attached as an Exhibit to plaintiff's complaint. Doc. No. 1-1, Exhibit 4, at 29. Pursuant to this lease, the subject land has been surveyed and explored for the development of natural gas and oil.

On February 4, 2011, Plaintiff filed a declaratory judgment action in the Washington County Court of Common Pleas and an action to quiet title based upon her theory of adverse possession. Doc. No. 1-1. On March 30, 2011, defendants filed a timely notice of removal based upon diversity of citizenship. On March 18, 2011, the Court held a status conference and pursuant to the Scheduling Order entered same date, the parties filed cross-motions for summary judgment on April 15, 2011. Also pending before this Court is plaintiff's motion to dismiss on the basis that defendant Arcelormittal supposedly "lacks standing" to challenge title because defendant Arcelormittal has not demonstrated to plaintiff that it owns any interest or has any legitimate claim to any interest in plaintiff's property. Doc. No. 20.

IV.     **Discussion**

**A. The 1928 Deed is Clear and Unambiguous**

In support of her motion for summary judgment, plaintiff first seeks this Court to undermine the clear and unambiguous meaning of the word "all" as contained in the applicable 1928 Deed. She contends that "all gas" means only gas that is "contained within the sandstone strata underlying the subject land." Doc. No. 1 at 37. Plaintiff contends that because "shale formation such as Marcellus and others in this area were not recognized as economically viable sources for natural gas," at the time the 1928 Deed was created, defendants predecessor-in-title could not have intended to reserve rights to "natural gas contained within the Marcellus shale or

6

other deep shales," because it was not "commercially exploitable" at that time. Doc. No. 14 at 3.

Over a half century ago, the Pennsylvania Supreme Court elucidated "certain rules applicable in the construction of deeds."[3] *Highland v. Commonwealth*, 161 A.2d 390, 401 (Pa. 1960), *cert. denied*, 34 U.S. 901 (citing *Brookbank v. Benedum Trees Oil Co.*, 131 A.2d 103 (Pa. 1957)).

> Among such rules are those providing (1) that the nature and quantity of the interest conveyed must be ascertained from the instrument *itself* and cannot be orally shown in the absence of fraud, accident, or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words; (2) effect must be given to all the language of the instrument and no part shall be rejected if it can be given a meaning; (3) the language of the deed shall be interested in light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

When called upon to interpret an unambiguous deed, just like any other contract, the Court need only ascertain the meaning of the words used. *Kimmel v. Svonavec*, 85 A.2d 146, 148 (Pa. 1952). "All of the language of the deed must be given effect and when the language of the deed is clear and unambiguous the intent of the parties must be gleaned solely from its language." *In re Conveyance of Land Belonging to City of DuBois,* 335 A.2d 352, 358 (Pa. 1975), *citing Teacher, Exrx. Et al. v. Kijurina*, 76 A.2d 197 (Pa. 1950).

The starting point, then, is to analyze the language of the 1928 Deed. The Reservation Clause contained within the 1928 Deed unambiguously "EXCEPTS AND RESERVES" to defendants' predecessor-in-title, "*all* gas and oil within and underlying" the subject land. The Court finds the language of the 1928 Deed to be clear and unambiguous - - it reserves rights to

---

[3] Because the Deeds relate to Pennsylvania property, and Deeds were signed in Pennsylvania, the Court will apply the law of this Commonwealth, as the parties agree.

7

"all" gas and oil. The word "all" means what it states - - "all."[4] The Court finds that operative language of the 1928 Deed contains no ambiguous or confusing language.

Plaintiff's cites to the lone case of *United States Steel Corporation v. Hoge*, 468 A.2d 1380 (Pa. 1983) in support of her argument. The issue before the Pennsylvania Supreme Court in *Hoge*, being one of first impression, involved a dispute between two parties who owned distinct mineral rights, about whether the owner of the specific vein of coal, or the owner of oil and gas rights in the surrounding substrata was entitled to recover and develop coalbed gas located within a specific vein of coal.

The operative facts of the *Hoge* case are as follows: The parties' predecessors-in-title had executed a Deed in 1920, pursuant to which the predecessor of US Steel (appellant) acquired "[a]ll the coal of the Pittsburgh or River Vein underlying all that certain tract of law…." *Id*. Under the 1920 Deed, the predecessor of appellee-surface owners retained "the right to drill and operate through said coal for oil and gas…." *Id.* Therefore, unlike the facts presented in the case *sub judice*, the 1920 Deed essentially subdivided the mineral estate.

The procedural history in *Hoge* commenced when US Steel brought an action seeking to enjoin the surface owners from drilling wells to recover coalbed gas which was found in the Pittsburgh Vein. Both the trial court and the Superior Court of Pennsylvania ruled in favor of the surface owners (Hoge), and US Steel then appealed to the Pennsylvania Supreme Court. The Pennsylvania Supreme Court reversed and held in favor of US Steel, finding that gas as is present in coal must belong to an owner of coal; but a landowner has title to property surrounding the coal, and owns the coal bed gas as it migrates into surrounding property. *Id*. at 1384.

---

[4] According to Merriam-Webster online dictionary, "all" is defined as "the whole amount, quantity or extent of; or as much as possible."

8

The underlying principle elucidated by the Pennsylvania Supreme Court was that "coalbed gas contained in coal is . . . property of the coal owner." *Id*. at 1384. That principle, although interesting and informative, is of no import to the instant dispute before this Court.

The facts in this case are distinguishable from *Hoge* because in the instant the mineral estate was not subdivided, and there are not multiple parties with different and potentially conflicting interests in the same mineral estate. In this case, the 1928 Deed, which the parties agree is controlling, reserves and excepts *all* subsurface oil and gas rights to the predecessor of ArcelorMittal Pristine.

The underpinning of the holding of the Court in *Hoge* is based upon its finding that the character, chemistry and composition of "coalbed gas" render it distinct from "natural gas." *Id*. at 1382. Plaintiff, in this case, rests her analysis on the Court's interpretation of whether the term "gas" which had historically referred to only "natural gas," should be interpreted to also include coalbed gas. The Court found that at the time of the Deed at issue, coal bed methane gas was considered a highly combustible and deadly poisonous gas which was not commercially exploitable. Based upon this finding, the Court stated: "[w]e find implicit in the reservation of the right to drill through the severed coal seam for 'oil and gas' a recognition of the parties that the gas which was generally known to be commercially exploitable." *Id*. at 1385.

Plaintiff uses the above rationale as the impetus for her argument that because Marcellus shale mining was not commercially exploitable at the time of the 1928 Deed, then the language in the 1928 Deed reserving rights to "all oil and gas" is somehow ambiguous. Plaintiff contends that under the rationale in *Hoge*, "it is apparent from the deed and language concerning the operations contained within the deed that the intent of the parties was to except and reserve only the geological formations capable of the production of natural gas with then existing

9

technology." Doc. No. 12 at 3.

While plaintiff advances a "creative" argument, because it is precedent that a clear and unambiguous Deed must be interpreted in a manner which gives meaning to all of the language of the instrument and no part shall be rejected if it can be given a meaning, her argument misses the mark. *Highland*, 161 A.2d 390, 401. The fact remains that the language of the Deed is clear and unambiguous and it reserves the rights to *all* oil and gas to defendants predecessor-in-interest.

The Court reiterates the long standing principle that "[a]ll of the language of the deed must be given effect and when the language of the deed is clear and unambiguous the intent of the parties must be gleaned solely from its language." *In re Conveyance of Land Belonging to City of DuBois,* 335 A.2d 352, 358 (Pa. 1975), *citing Teacher, Exrx. Et al. v. Kijurina*, 76 A.2d 197 (Pa. 1950). The clear language of the Deed must be construed to give effect to the word "all". By reading the plain language of the exception/reservation clause, the parties intent was for ArcelorMittal Pristine (its predecessor) to maintain ownership of the complete, undivided mineral estate under the subject property. Thus, defendants own all subsurface gas. *See e.g. Hutton v. Carnegie Natural Gas Co.*, 51 Pa. Super. 376 (1912) (explaining that "[o]il and gas in and under land, being minerals, are part of the realty, which notwithstanding their migratory nature, may be severed in title from the surface by conveyance so as to vest in the grantess the mineral estate, as fully as it was before vested in the owner of the land.")

B. **No Adverse Possession**

Plaintiff next argues, in the alternative, that she has adversely possessed the oil and gas estate underlying her property. The crux of her argument is this - - because she leased her subject property on three separate occasions beginning shortly after her acquisition of the land in

1971, in 1981, and again in 2006, she somehow acquired rights in and title to said property, despite the language in the 1928 and 1971 Deeds through the law of adverse possession.

It is beyond peradventure that in order to claim title to real property by adverse possession in this Commonwealth, a party must affirmatively prove that he or she had actual, continuous, visible, notorious, distinct, and hostile possession of the land in excess of twenty-one (21) years. *Rec. Land. Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa. Super. 2008); *Kaminski Brothers v. Grassi*, 352 A.3d 80, 81 (Pa. Super. 1975). It is also well-established precedent that, where mineral rights have been severed from surface rights, the possession of the surface estate will not become adverse possession of the mineral estate *unless* there is an *actual* entry upon and use of the underlying minerals for the requisite time period. *Plummer v. Hillside Coal & Iron Co.,* 28 A. 853 (Pa. 1894); *Shaffer v. O'Toole*, 964 A.2d 420, 423 (Pa. Super. 2000).

At least one Court of this Commonwealth has already considered and rejected the exact argument now advanced by plaintiff. *Thomas v. Oviatt*, 5 Pa. D & C 4th 83, 83 (C.C.P. Warren Cty. 1989). In *Oviatt*, the Court of Common Pleas of Warren County summarily rejected the exact same argument advanced by plaintiff herein, that is: by leasing the mineral rights on three separate occasions beginning in 1971 and recording the leases openly in the Washington County Recorder of Deeds, she now maintains title to the mineral rights through the law of adverse possession. The Court stated:

> Plaintiffs' contention, that plaintiffs' intention to hold the subsurface for themselves, was manifested by the granting of the aforesaid three leases is woefully lacking in that one may not lose title to realty simply by one claiming a right thereto. If this were so, no estate would be free from attack and acquisition. Plaintiff argue defendants could have, with due diligence, checked the indexes at the courthouse periodically to determine if there was any activity affecting their oil, gas and minerals. A property owner does not have to daily visit the Recorder's Office to ascertain if one is making a claim for his property.

11

*Id*. at 85.

As defendants have emphasized, other state courts that have considered this issue have held the same - - in order achieve title to oil and natural gas by adverse possession, actual possession, meaning drilling and production, of the minerals must occur. *See e.g. Natural Gas Pipeline Co. of America v. Pool*, 124 S.W.3d 188 (Tex. 2003); *Schaneman v. Wright*, 470 N.W. 566, 577 (Neb. 1991)(mere execution, delivery or recording of oil and gas lease or mineral deeds will not constitute adverse possession); *Piney Oil & Gas Co. v. Scott*, 79 S.W.2d 394, 401 (Ky. 1934)(adverse occupation and use of property "cannot be wrought in the office of the county clerk no matter how many deeds or leases the would-be disseisor may record there.") *Lyles v. Dodge*, 228 S.W. 316, 317 (Tex. Civ. App. 1921) (registration of oil lease, even if they had been recorded for a sufficient length of time to meet the requirements of the statute, would not constitute notice of adverse possession of the minerals.)

In this case, judging the facts in the light most favorable to plaintiff, there is not even an allegation that plaintiff or her alleged "leaseholders" drilled or attempted to drill on the property at any point since the date she bought and first leased the property (1971). On the contrary, the material facts as set forth by plaintiff demonstrates that she has merely leased this property and there has not, to date, been any further cultivation of the subject property (save survey). Therefore, plaintiff fails to meet the first element required under the law of adverse possession: that there be *actual* possession on some part of the land at issue. Without belaboring the point, since there has never been *any* drilling on the property, it necessarily follows then, that plaintiff has failed to demonstrate other crucial elements of the law of adverse possession - - that the possession was visible and notorious. *Stark v. Pennsylvania Coal Co.*, 241 Pa. 597, 600 (Pa. 1913). The Court will not continue to address the remaining elements of adverse possession

because *each* of these elements must be satisfied in order to acquire title through the law of adverse possession. *Hartzfeld*, 947 A.2d at 774.

### C. Dismissal/Remand Is Not Appropriate for Lack of Standing

*After* the issue of summary judgment was fully briefed before this Court by both parties, plaintiff now files a belated attempt to divest this Court of jurisdiction. She now contends that the defendant Arcelormittal Pristine Resource, Inc. (the only defendant who maintains a corporate existence), the same defendant that she sued, now lacks "standing" to defend itself against plaintiff's claims.

In support thereof, she argues that defendant Arcelormittal "has not demonstrated to the Plaintiff or to this Court that it owns any interest or has any legitimate claim to any interest in the Plaintiff's property." Doc. No. 20. Setting aside the fact that any such motion is long overdue (motion to remand was due by April 1, 2011), her motion lacks merit.

To paraphrase the factual allegations within her own complaint as outlined more comprehensively hereinabove: by Deed dated July 31, 1924, Union Coal and Coke Company conveyed certain property, including the Parcel to BCIM; by Deed dated July 24, 1928, BCIM conveyed certain rights in and to the Parcel to Mary Kukovich with the included reservation provisions addressed hereinabove; defendant BCIM became, through a series of name changes and mergers, Bethlehem Steel Corporation; Bethlehem Steel filed for bankruptcy, and in 2001, was dissolved with the remaining assets conveyed to Pristine Resources, Inc.[5] by Deed dated May 6, 2003 and recorded in the Washington County Recorder of Deeds Office at instrument number 200320657. Doc. No. 1-1, ¶ 4; Pursuant to the 2003 Deed, which defendants attach at

---

[5] The name of Pristine Resources, Inc. was changed to ArcelorMittal Pristine Resources, Inc. on September 26, 2007. This fact is a matter of public record (see doc. no. 23-8), and the Court will not convert this motion to dismiss into one for summary judgment on this basis.

13

doc. no. 23-1, under heading of "partial source of title" the 1924 Deed is identified as the mean by which BCIM acquired its interest in the Parcel from Union Coal and Coke Company.

Accepting the facts of the well pleaded complaint as true, and only viewing matters of public record which are attached to the complaint and upon which the complaint is based, the argument that defendant Arcelormittal Pristine Inc. lacks standing is devoid of merit. Furthermore, plaintiff's argument that if the Court dismissed Arcelormittal Pristine Inc., then diversity jurisdiction would no longer exist is even more problematic since BCIM, even if it was not defunct - - which it is, was incorporated in West Virginia and, therefore, diversity jurisdiction would still exist. Accordingly, plaintiff's motion to dismiss and remand to state court will be denied.

V. **Conclusion**

For the reasons set forth hereinabove, the Court will grant defendants' motion for summary judgment, and will deny plaintiff's motion for summary judgment. Plaintiff's motion to dismiss and for remand to state court will also be denied. An appropriate order follows.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties

Gina M. Banai
510 Main Street
Suite E
Bentleyville, PA 15314